**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **BLANCA RIVERA ROMERO; BLANCA ROSA MAYOL RIVERA; ARLEENE MARIE MAYOL RIVERA**<br><br>**Plaintiffs**<br><br>**Vs.**<br><br>**INSPIRA BEHAVIORAL CARE; HOSPITAL METROPOLITANO DR. PILA; ABC and DEF Insurance Companies, John Doe and James Roe**<br><br>**Defendants** | CIVIL NO.<br><br>RECOVERY FOR TORT DAMAGES PERSUANT TO ARTS. 1802 and 1803, 31 L.P.R.A. §§ 5141 and 5142<br><br>TRIAL BY JURY DEMANDED |

**COMPLAINT**

**TO THE HONORABLE COURT**:

APPEAR NOW the Plaintiffs, Blanca Rivera Romero, Blanca Rosa Mayol Rivera and Arleene Marie Mayol Rivera, through their undersigned attorney, and respectfully state and request as follows:

**JURISDICTIONAL BASIS AND VENUE**

1. This Court has subject- matter jurisdiction pursuant to 28 U.S.C § 1332, as there is complete diversity of citizenship between the parties.

2. Diversity of jurisdiction is established as Plaintiffs are citizens and domiciled in the state of Florida and all Defendants are domiciled, incorporated and/or have a principal place of business in Puerto Rico or a state other than Florida.

3. Plaintiffs hereby include a medical malpractice action under Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A §§ 5141 and 5142, and Articles 20.01 and 20.03 of Insurance Code of Puerto Rico, 26 L.P.R.A. §§ 2001 and 2003, pursuant to the supplemental jurisdictional statue, 28 U.S.C §1367 (a), in as much as all the allegations arise form a common nucleus of operative fact.

4. The matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, thus vesting jurisdiction on this Honorable Court pursuant to 28 U.S.C. § 1332.

5. The hospital negligence that motivates this Complaint took place on December 25, 2015 in Ponce, Puerto Rico. Therefore, venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. §1391 since the events or omissions giving rise to this claim occurred in this district.

**THE PARTIES**

6. Plaintiff Blanca Rivera Romero is of legal age, single and domiciled in the state of Florida. Her address is 2768 Ponkan Summit Dr, Apopka, Fl 32712. She is the mother of Julio Mayol Rivera, R.I.P.

7. Plaintiff Blanca Rosa Mayol Rivera, of legal age, married and domiciled in the state of Florida. Her address is 2768 Ponkan Summit Dr, Apopka, FL 32712**.** She is the sister of Julio.

8. Plaintiff Arleen Marie Mayol Rivera, of legal age, married and domiciled in the state of Florida. Her address is 675 NW Flagler Ave, Apt. 201, Stuart FL. 34994. She is the sister of Julio.

9. Defendant INSPIRA Behavioral Care (herein after "**INSPIRA**") is a corporation organized and doing business under the Laws of Puerto Rico as a psychiatric hospital at 184 Guadalupe Street, Second Floor, Ponce, Puerto Rico.

10. Defendant Hospital Metropolitano Dr. Pila ("**Hospital Dr. Pila**") is a corporation organized and doing business under the Laws of Puerto Rico as a general hospital at 2445 Ave. Las Américas, Ponce, Puerto Rico 00717.

11. Defendant ABC Insurance Company is an insurance company organized and doing business under the Laws of the Commonwealth of Puerto Rico that, at the time of the facts and damages alleged herein, had issued and

maintained in full force and effect a professional liability policy in favor of INSPIRA covering the damages suffered by plaintiffs as a result of the negligence from its insured and the employees of its insured.

12. Defendant DEF Insurance Company is an insurance company organized and doing business under the Laws of the Commonwealth of Puerto Rico that, at the time of the facts and damages alleged herein, had issued and maintained in full force and effect a professional liability policy in favor of Hospital Dr. Pila covering the damages suffered by plaintiffs as a result of the negligence from its insured and the employees of its insured.

13. John Doe and James Roe are joint natural and/or corporate tortfeasors. Upon information and belief, they are liable for the negligent acts and omissions complained of herein, but whose acts and true identities are unknown to plaintiffs. Plaintiffs will request leave to the Honorable Court to amend their Complaint to state the true names of the said unknown Defendants when said names are known to the plaintiffs, and to allege specifically their claims against said defendants.

## GENERAL ALLEGATIONS

14. On December 23, 2015, following the advice of a friend named Julio González Fortuño, Julio decided to receive treatment for his condition of alcoholism.

15. That same day, at 10:40 a.m., Julio arrived at INSPIRA accompanied by Mr. González Fortuño to treat his condition.

16. The physician assigned by INSPIRA conducted a physical history and examination on Julio and determined that he should be admitted to the hospital to receive care and treatment for his condition.

17. In spite its personnel knew the amount of alcohol that Julio had consumed, INSPIRA did not have laboratory studies performed until the 25th of December, 2015 at 7:30 a.m.

18. The laboratory studies performed on Julio reflected low White Blood Cell count, and his liver and thyroid panels and ammonia levels were very high, which was an indication of chronic liver disease.

19. INSPIRA subjected Julio to a psychologic evaluation. The evaluation showed that Julio was suicidal, crying constantly, anxious, agitated, mad, and with palpitations, mental block, trembling, visual and additive hallucinations, delirium

of persecution, delusions, disorganized thought processing, irrational ideas, depression, psychosis, and persisting perceptional disorder.

20. According to the medical record, a psychiatrist form INSPIRA reported that Julio's behavior was completely dysfunctional and that he was suffering from psychomotor retardation, confusion, slowness in movement and speech and that he was disoriented in time, person and time. However, INSPIRA failed to recognize that Julio was also suffering from acute alcohol withdrawal syndrome, which, if left untreated, increase the patient's risks of seizures or heart attack.

21. The medical staff from INSPIRA ordered the transfer of Julio to Hospital Dr. Pila to determine the cause of the low White Blood Cell count. The physician also ordered that Julio should be accompanied at all times and that the employee assigned by INSPIRA was also ordered to accompany Julio during the transfer and to stay with him until she was substituted by an employee assigned by Hospital Dr. Pila.

22. Julio was transferred in ambulance to Dr. Pila, on December 25, 2015, at approximately 4:30 p.m.

23. When Julio arrived at Dr. Pila, he was in bad state, confused and disoriented, and he could not sign any of the emergency room forms. The forms

were signed by Jessica Ríos. This contradicts what the personnel of Hospital Dr. Pila wrote on the medical records forms stating that Julio was alert and oriented.

24. Personnel of the Hospital Dr. Pila contacted Mr. González Fortuño to notify that Julio had been received in the hospital and that he needed to be accompanied by a relative.

25. Personnel of Hospital Dr. Pila also informed Mr. González Fortuño that Julio was in critical state and that he had to receive a blood transfusion.

26. Mr. González Fortuño contacted Julio's sister, Blanca Rosa, to let her know that Julio needed to be accompanied by a relative. Blanca Rosa informed this to her mother, Mrs. Rivera Romero, who immediately began to call family members.

27. Since plaintiffs were in Florida, Mrs. Rivera Romero requested her brother, José Rivera, to accompany Julio at Hospital Dr. Pila.

28. The employee assigned by INSPIRA left the hospital at approximately 7:45 pm, stating that a family member was on the way and leaving Julio alone without any supervision and in clear violation of the medical order issued by the INSPIRA's physician.

29. At around the same time, Mrs. Rivera Romero's brother, José Rivera, went to Hospital Dr. Pila to accompany Julio, but the hospital's personnel told him

to leave because Julio was being attended and that they were doing some medical studies to the patient. Personnel of Hospital Dr. Pila asked for José's phone number, and said that they would call him if they necessary.

30. Blanca Rosa was in constant communication that night with the personnel of Hospital Dr. Pila. An employee from Hospital Dr. Pila told Blanca Rosa that someone had sent Mr. Rivera home. Blanca Rosa was so distraught and upset, and pleaded for them not to leave Julio unattended and alone.

31. Worried, concerned, stressed and anxious by the information provided by her brother and daughter, Mrs. Rivera Romero requested Mr. González Fortuño to check on Julio at Hospital Dr. Pila.

32. At around 9:10 p.m., Hospital Dr. Pila's nursing staff noticed that Julio had abandoned the institution without being discharged. They did not contact any of the family members to tell them Julio had left the hospital nor they called the police or sent its personnel to look for Julio within the hospital's vicinity.

33. Blanca Rosa called Hospital Dr. Pila at approximately 10:00 p.m. to check on Julio's condition, and was informed by Hospital Dr. Pila's staff that Julio had eloped out of the hospital. Blanca Rosa, being aware of her brother's critical condition, asked Hospital Dr. Pila's employee why they let that happen and that

Julio could die. The hospital's employee responded that Julio was an adult, that he could leave if he wanted to and, thus, that they did not attempt to look for him.

34. Hospital Dr. Pila did not call 9-1-1 or the police to inform that a patient in critical conditions was missing.

35. At around 10:15 p.m. or so, Mr. González Fortuño arrived at Hospital Dr. Pila finding out that the hospital's personnel did not know where Julio was.

36. Immediately, Mr. González Fortuño called Mrs. Rivera Romero to inform Julio's disappearance.

37. Desperate and anguished by this situation, Mrs. Romero Rivera made efforts to travel to Puerto Rico as soon as possible but the first flight that she could get was on December, 27, 2015.

38. Mrs. Romero Rivera requested Mr. González Fortuño and other friends to search for Julio.

39. Once in Puerto Rico, on December 27, 2015, Mrs. Romero Rivera began to look for his son all around Ponce for two days.

40. On December 27, 2016, an agent from Puerto Rico Police called Mrs. Romero Rivera to inform that they had found Julio near kilometer 96.9 on the express PR-52, but her happiness did not last long because when Mrs. Romero Rivera arrived to the site she was informed that he was found dead.

41. Instituto de Ciencias Forenses determined that the cause of death was multiple body trauma.

42. The Toxicology Report showed that Julio had consumed alcohol.

43. Although it is not mentioned in the pathology report, it is reasonable to conclude that Julio was hit by a motor vehicle and abandoned to his death, which would not have occurred if INSPIRA and Hospital Dr. Pila's personnel would have not left him alone with the opportunity to elope of the hospital. That is a risk that must be avoided with this type of patients precisely because, if the patient abandons the hospital, he or she is in high risk of a life threatening accident.

**CAUSE OF ACTION**

44. The allegations contained above are incorporated herein by reference as if again fully set forth.

45. Defendants, through their own acts or omissions or the acts or omissions of their employees, agents, representatives, or assignees, have caused damages to Plaintiffs through fault or negligence in violation of Art. 1802 of the Civil Code of Puerto Rico, supra, and/or Art. 1803 of the Civil Code of Puerto Rico, supra.

46. INSPIRA, through their own acts or omissions or the acts or omissions of their employees, agents, representatives, or assignees, were negligent for not following the orders issued by its own physicians.

47. The employee assigned by INSPIRA to accompany Julio at all time was negligent because she did not stay with the patient until substituted by someone from Hospital Dr. Pila and/or a relative from the patient.

48. Hospital Dr. Pila, through their own acts or missions or the acts or omissions of their employees, agents, representatives, or assignees, were negligent for not taking the necessary measures not to leave Julio unsupervised and alone in spite the transferring hospital has requested that patient was accompanied at all times.

49. Hospital Dr. Pila were negligent for allowing a patient that was under their care and custody to abandon the hospital without no one noticing it for some hours.

50. INSPIRA and Hospital Dr. Pila's employees abandoned Julio at Hospital Dr. Pila ultimately causing his death due to his critical condition, leaving him at the mercy of the substance that he was trying to avoid and of the element of the outside world due to his dysfunctional state of mind.

51. The main reason to admit alcoholic patients to a hospital is that inpatient environment offers the benefits of continuous care and supervision by professional staff and the easy availability of treatment for any complication. More importantly, inpatient environment stop patient access to alcohol and give distance from the alcohol-using ambience. Both INSPIRA and Hospital Dr. Pila negligently deprived Julio from those benefits allowing to get access to alcohol without receiving the care and treatment for the condition that made the physician from INSPIRA to transfer him to Hospital Dr. Pila.

52. Patients like Julio suffers from alcohol withdrawal syndrome, which is a life-threatening condition if the patient does not receive medical attention.

53. Both INSPIRA and Hospital Dr. Pila, through their own acts or omissions or the acts or omissions of their employees, agents, representatives, or assignees, did not provide a constant care and supervision to Julio nor give him access to the available tools to take care and treat the condition that was making his White Blood Cells count to drop. Rather, they allowed Julio to wander around Ponce in search for alcohol until his death.

54. Should the physicians, nursing staff and/or security personnel from Hospital Dr. Pila had made security rounds, they should have noticed that the

employee from INSPIRA had left Julio alone and/or would have noticed that he had abandoned the place assigned to him without an order from a physician.

55. Hospital Dr. Pila, through its own acts or omissions or the acts or omissions of their employees, agents, representatives, or assignees, was negligent for allowing an admitted patient such as Julio to leave the hospital without an order from a physician to do so.

56. If INSPIRA and Hospital Dr. Pila's personnel would have not left Julio alone, he would have not abandoned the hospital, and his untimely death could have been avoided.

57. Although patient elopement is a known dangerous and sometimes deadly situation, as unfortunately was the case here, Hospital Dr. Pila and INSPIRA did not have a plan or protocol nor had educated or trained their employees and staff to avoid it and, because of said negligence, Julio abandoned the hospital to wander around Ponce looking for alcohol, which resulted in his temporally related death.

58. The physicians and other staff that intervened with Julio on December 24 and 25, 2015, at INSPIRA and Hospital Dr. Pila were selected and assigned by said medical institutions and, consequently, the hospitals are liable for the negligence incurred by the physicians and the other staff.

59. INSPIRA, Hospital Dr. Pila and their staff's negligence was the adequate cause of plaintiffs' damages and, consequently, they are jointly liable for said damages.

**DAMAGES**

60. As a direct and proximate result of the Defendants' acts and omission, Plaintiffs have suffered and will continue to suffer greatly due to the needless and avoidable death of their son and brother.

61. Plaintiffs will forever suffer the loss of the love of Julio and they will be always hunted by the tragic manner in which he died.

62. Plaintiff Blanca Rosa Rivera Romero claims a sum not less than SEVEN HUNDRED THOUSAND DOLARS ($700,000.00) for her past, present and future emotional pain and suffering caused by the loss of her son.

63. Plaintiff Blanca Rosa Mayol Rivera claims a sum not less than THREE HUNDRED AND FIFTY THOUNSAND DOLLAR ($350,000.00) for her past, present and future emotional pain and suffering caused by the loss of her brother.

64. Plaintiff Arleen Marie Mayol Rivera claims a sum not less than THREE HUNDRED AND FIFTY THOUNSAND DOLLAR ($350,000.00) for her past, present and future emotional pain and suffering caused by the loss of her brother.

65. Consequently of defendants' negligence, Julio wandered alone around Ponce suffering the physical pain and emotional devastation associated to alcohol withdrawal syndrome and/or the signs and symptoms related to the condition that caused his White Blood Cell Count to drop and/or the sign and symptoms related to a relapsed on alcohol until the time of his death.

66. Consequently of defendants' negligence, Julio was exposed to be hit by a motor vehicle.

67. Consequently of defendants' negligence, Julio was hit by a motor vehicle and left abandoned under extreme pain and suffering until his death.

68. Julio's pain and suffering is estimated in a sum no less than EIGHT HUNDRED AND FIFTY THOUSAND DOLLARS ($850,000.00).

69. Mrs. Rivera Romero's inherits the totality of Julio's claim and damages because he died without children and intestate, and, consequently, she also claims the amount stated in paragraph sixty-eight (68) of this Complaint.

70. Defendants are jointly and severally liable for the damages herein claimed.

**TRIAL BY JURY DEMANDED**

71. Plaintiffs demand trial by jury.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, in the amount of no less than TWO MILLION TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($2,250,000.00) as well as a reasonable attorney's fee, and such further relief as to this Honorable Court may deem just and proper under the law.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 26th day of September, 2016.

**S/Raphael Peña Ramón**
RAPHAEL PEÑA RAMÓN-212201
**PEÑA RAMÓN & CO. LAW FIRM**
VIG Tower, Suite 701
1225 Ponce de León Avenue
San Juan, PR 00907
Tel. (787) 977-9595
Fax (787) 977-9494
E-mail: rgpena@penaramonlaw.com