IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BLANCA RIVERA ROMERO, et. al.,

Plaintiffs,

v.

INSPIRA BEHAVIORAL CARE, et. al.,

Defendants.

CIVIL NO. 16-2721 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Before the Court is a "Joint Motion *in Limine* to Preclude the Opinions and Testimony of Plaintiffs' Expert Dr. Víctor Santiago Noa" filed by co-Defendants Hospital Metropolitano Dr. Pila and Inspira Behavioral Care (collectively "Defendants"). Defendants aver that Plaintiffs' expert Dr. Víctor Santiago Noa ("Dr. Santiago Noa") should not be allowed to testify at trial because his report fails to conform to the requirements of Fed. R. Civ. P. 26. In addition, they contend that his report and testimony are not reliable under Federal Rule of Evidence 702 and the landmark case of Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993). (Docket No. 74).

Plaintiffs proffer a variety of reasons in opposition to Defendants' Motion in Limine. (Docket No. 83).

For the reasons explained below, the Court DENIES Defendants' Motion in Limine.

## ANALYSIS

Federal Rule of Evidence 702 states that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

A review of the case law after <u>Daubert</u> shows that the rejection of expert testimony is the exception, rather than the rule. The <u>Daubert</u> case did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." <u>United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi</u>, 80 F.3d 1074, 1078 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Daubert</u>, 509 U.S. at 595.

Furthermore, it has been established that "<u>Daubert</u> does not require that a party proffering expert testimony convince the court that the expert's assessment of the situation is correct, but rather, [a]s long as an expert's scientific testimony rests upon good grounds it should be tested by the adversary process-competing expert testimony and active cross-examination-rather than excluded from jurors' scrutiny for fear that they

will not grasp its complexities or satisfactorily weigh its inadequacies." United States v. Perocier, 269 F.R.D. 103, 107 (D.P.R. 2009) (*citing* Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)). Therefore, the Court's analysis must be flexible, not rigid, and must ensure that expert testimony is relevant. Daubert, 509 U.S. at 592. Besides establishing relevancy, the Court must also ensure that the expert opinion is sufficient and reliable. Carrelo v. Advanced Neuromodulation Sys., Inc., 777 F. Supp. 2d 315, 318 (D.P.R. 2011).

Turning to the case at bar, Defendants argue that Dr. Santiago Noa allegedly failed to establish the proper standard of care in his report. However, after a review of the reports of the expert witnesses for all parties, it is noted that Plaintiffs' expert witness and those of Defendants do address the standard of care and they do so in the same way. Thus, what is good for the goose is good for the gander.

Dr. Santiago Noa's report states that "in this case, it was identified that the patient was at risk of elopement",[1] a fact clearly stated in the record and an undeniable conclusion reached by that *all* experts in this case, including those for Defendants. All three experts, in addressing the standard of care, conclude that special care must be taken by the institution in cases where patient elopement is a possibility. Dr. Santiago Noa then goes on to detail how Dr. Pila Hospital, breached said requirement, a conclusion which Dr. Pila Hospital naturally does not agree with. Therefore, Defendants' contention that the report does not detail the standard of care and that they cannot "properly prepare for rebuttal or cross examination at trial" regarding this issue falls short.

---

[1] Docket 74, Exhibit 1, p. 4.

Defendants also aver that Dr. Santiago Noa's report violated the Federal Rules because he changed his expert opinion during his deposition, offering opinions of alcohol withdrawal that were not originally included in his report. Plaintiffs' main contention, however, is that Dr. Pila Hospital failed to properly supervise Julio Mayol while there, and he eloped. Facts and conclusions as to this specific matter are clearly detailed in the report. That Dr. Santiago Noa failed to include in his report an opinion regarding alcohol withdrawal does not deviate from Plaintiffs' main assertion, to wit, that Dr. Pila Hospital had a duty toward a patient in this case, failed to comply with it, and was therefore negligent in the treatment provided to him. This is precisely the kind of issue that falls squarely within the jury's province. See Carrelo 777 F. Supp. 2d at 318-19 (a challenge to the factual underpinnings of an expert opinion is a matter that affects the weight and credibility of the testimony and is a jury question) *citing* United States v. Vargas, 471 F.3d 255, 264 (1st Cir. 2006) and Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 544-545 (1st Cir. 1988)) ("The burden is on opposing counsel through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion").

This reasoning also applies to Defendants' argument that Dr. Santiago Noa never worked in hospital administration and is not an expert in emergency room medicine or internal medicine. Whether these facts may ultimately help Defendants during the trial is not for this Court to determine at this stage, but is a matter entrusted to the jury as part of its fact-assessment duty. All these arguments go to the weight of Dra. Santiago Noa's testimony, not its admissibility. Defendants are free to voire dire and cross-examine the doctor on the stand, and the jurors will give his testimony the probative value they see fit.

Regarding the reliability of principles and methods under Daubert and its progeny, some types of expert testimony will be more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than other, non-scientific testimony. Indeed, some types of expert testimony will not rely on anything like a scientific method, and will thus have to be evaluated by reference to other standard principles attendant to the particular area of expertise. It is therefore the job of the trial judge to determine whether proffered expert testimony is properly grounded, well-reasoned, and not speculative before it can be admitted. See *e.g.*, American College of Trial Lawyers, *Standards and Procedures for Determining the Admissibility of Expert Testimony after Daubert*, 157 F.R.D. 571, 579 (1994) ("[W]hether the testimony concerns economic principles, accounting standards, property valuation or other non-scientific subjects, it should be evaluated by reference to the 'knowledge and experience' of that particular field.").

In the instant case, Dr. Santiago Noa is qualified as an expert because of his knowledge, skill, and experience and training, as his deposition testimony clearly established. He has further rendered services in several cases as an expert, both for plaintiffs and defendants. That he has a psychiatry specialization is undeniably relevant to the case at hand, insofar as Julio Mayol, the decedent, had a mental condition at the time the events in this case took place.[2] As such, Dr. Santiago Noa's testimony will certainly help the trier of fact better understand the relevant issues in this case.

---

[2] Co-Defendant Inspira Behavioral Care is a specialized psychiatric hospital that serves adult patients with mental conditions and substance dependence. (Docket No. 37, p. 2).

Additionally, as an expert in psychiatry, Dr. Santiago Noa offered his conclusions as to the cause of the elopement and death, after evaluating the totality of the evidence before him. The Court cannot say that his conclusions are irrelevant or unreliable, insofar as they seem properly grounded, well-reasoned, and are clearly based on the evidence he examined and his knowledge and long experience in this field. At this stage, that is all the Court needs to analyze as part of its gatekeeping function. Whether or not Dr. Santiago Noa's opinions and conclusion, as to any negligence by Defendants and the cause of death, will ultimately sway a jury remains a matter to be assessed at trial by the trier of fact.

## CONCLUSION

In view of the above, Defendants' Motion in Limine is DENIED. (Docket No. 74).

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 23rd day of January 2020.

                                             S/CAMILLE L. VELEZ-RIVE
                                             CAMILLE L. VELEZ RIVE
                                             UNITED STATES MAGISTRATE JUDGE